**Supreme Court**

No. 2012-230-C.A.

(N1/08-157A)

State                              :

v.                              :

Christian Buchanan.                              :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                           :

v.                              :

Christian Buchanan.             :


Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.


## O P I N I O N

**Justice Goldberg, for the Court.**  The defendant, Christian Buchanan (defendant or Buchanan), is before this Court on appeal from a judgment of conviction on one count of first-degree child molestation in violation of G.L. 1956 § 11-37-8.1, and three counts of second-degree child molestation in violation of § 11-37-8.3.  In support of his appeal, the defendant argues that the trial justice abused her discretion in refusing to exclude all evidence of uncharged acts of molestation, and that she erred in denying the defendant's motion for judgment of acquittal and motion for a new trial.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

### Facts and Travel

The events giving rise to this case began in 1996 when Buchanan met then six-year-old K.B.[1]  At the time, K.B. resided with her mother and her two sisters in a second-floor apartment of a multifamily home located in Fall River, Massachusetts.  Buchanan frequently visited his uncle who lived nearby, and he became friendly with K.B. and the other neighborhood children,

---

[1] For the sake of privacy, the complainant has been given a pseudonym, and members of her immediate family will be referred to by their first names.

with whom he played games, such as soccer and basketball.

This relationship changed, however, after Buchanan began to date K.B.'s mother, Amy. In April 2000, Buchanan moved into the first of a series of homes in which K.B.'s family resided, located on Cottage Avenue in Portsmouth, Rhode Island. K.B. shared a second-floor bedroom with her younger sister, Emily; her older sister, Susan, occupied another bedroom on the second floor, and Buchanan and Amy shared a bedroom on the first floor. K.B. testified that she was opposed to Buchanan moving in with her family and that she felt Buchanan was trying to take the place of her biological father, who had left when K.B. was only four days old. K.B. made her feelings known to Amy, including the fact that Buchanan was closer in age to her older sister Susan than he was to her mother.

These were not the only reasons for K.B.'s animus, however. K.B. testified that there were at least two instances—occurring shortly after Buchanan moved to Cottage Avenue—when he came to her room in the middle of the night. According to K.B., during the first incident, Buchanan awakened her and began rubbing lotion onto her back and buttocks. During this encounter, the child—who was ten years old at the time—did not say or do anything, and faced away from Buchanan. Later, Buchanan explained to K.B. that he had given her a massage. K.B. also described another instance when Buchanan entered her room in the middle of the night and rubbed lotion onto her back, buttocks, and chest. After these episodes, Buchanan admonished K.B. not to tell her mother; he also plied the child with candy or large sums of money, often between $75 to $100 in cash.

In January 2002, when K.B. was almost twelve, the family, including Buchanan, moved to a three-bedroom home on Chestnut Hill Road in Middletown, Rhode Island, where K.B. again shared a bedroom with her younger sister. K.B. testified that approximately one month after

moving to this address, Buchanan resumed visiting her room in the middle of the night and rubbing lotion on her back, buttocks, legs, and chest. It was during the time the family lived at this location that Buchanan also began to touch and penetrate K.B.'s vagina with his finger, and showed her his penis. K.B. would remain silent during these incidents and did not disclose these events to anyone. In fact, the child never told anyone about Buchanan's abuse, despite a pointed inquiry by the mother of her best friend, who saw K.B. with large sums of cash. Amy also testified that she noticed money missing from Buchanan's paycheck "at least once a month."

Less than two years later, K.B. and her family moved again, this time to a two-family home on Chase Road in Portsmouth, where K.B. had her own room. Although K.B.'s mother and defendant married while the family lived at this address, Buchanan nevertheless continued to molest K.B., and visited her room in the middle of the night to rub lotion onto her back, buttocks, legs, and breasts. However, these visits stopped after K.B. turned seventeen and her family moved yet again, this time to Coral Street in Portsmouth. K.B. testified that she "finally got the guts to stand up for myself," because she "knew more of what was going on, [and that] what he was doing was wrong." She testified that "I just didn't take it anymore" and "I just didn't let anything happen. Eventually it stopped."

By the time the molestations ended, however, K.B.'s relationship with her mother had deteriorated significantly. K.B. testified that she blamed her mother for bringing Buchanan into their lives, and felt that her mother had to have known what Buchanan had done to her. The child repeatedly asked her mother for permission to move away from home, and Amy refused. Nonetheless, K.B. made plans to move in with her boyfriend's family shortly after her eighteenth birthday.

On April 8, 2008, Dwayne Arruda, her boyfriend's father, arrived at the family's home,

now located in Tiverton, Rhode Island, to collect K.B. and her belongings. Upon arrival he discovered, contrary to what he was led to believe, that K.B. was not being forced to leave home, because Amy was asking K.B. why she felt she had to move out. K.B. told her mother flatly that it was because of Buchanan, who was standing nearby, in silence. Once she was safely in Arruda's truck, a hysterical K.B. disclosed that Buchanan had molested her over the course of seven years. Although K.B. did not tell her mother about the abuse prior to her departure, she left a handwritten letter in her mother's car, in which she disclosed Buchanan's sexual assaults. When Amy retrieved the letter from the car, she read it, confronted Buchanan, and called the police.

Deputy Chief Jeffrey Furtado (Chief Furtado) of the Portsmouth Police Department[2] testified that on April 11, 2008, he was notified that the Tiverton police had responded to a domestic disturbance in that town and a preliminary investigation revealed that instances of child molestation may have occurred years earlier in Portsmouth, and that the suspect was at the police station. Acting Det. Sergeant Scott Travers (Det. Travers) responded to the Tiverton police station and asked Buchanan if he would accompany him to the Portsmouth Police Department. Buchanan agreed, and the pair traveled to the Portsmouth police station.

Meanwhile, K.B. appeared at the Portsmouth Police Department to formally complain about Buchanan's conduct. She alleged that Buchanan had touched her inappropriately over the course of seven years. When Buchanan arrived at the police station, he was informed that his stepdaughter had made allegations of sexual abuse against him. According to Chief Furtado, defendant appeared remorseful and acknowledged that he had a problem and needed help. Chief Furtado testified that Buchanan then asked, "What do you want to know? And where do you

---

[2] At the time, Deputy Chief Furtado held the rank of Detective Lieutenant and was in charge of the detective division of the Portsmouth Police Department.

want me to start?"

The defendant was advised of his <u>Miranda</u> rights and signed and initialed a prepared rights form.[3] Buchanan then proceeded to detail how he began abusing K.B. shortly after he moved into the Cottage Avenue home and continued until approximately 2007, when the family moved to Coral Street. Buchanan recounted that when he first began molesting K.B., it would occur a couple of times a week. According to Buchanan, the abuse continued at this pace after the family moved to Middletown, but that when the family moved back to Portsmouth, it occurred approximately twice a month.

After giving an oral statement, defendant agreed to a written confession. At 3:30 p.m.—twenty minutes after arriving at the police station and ten minutes after signing the rights form—Buchanan provided a handwritten statement to police. Upon reviewing that written statement, Chief Furtado noted that Buchanan had left out certain details that he had previously disclosed, including digital penetration. Chief Furtado asked Buchanan to include these details in his written statement, and Buchanan obliged. However, the amended statement was difficult to read, so Chief Furtado then asked Buchanan to provide another statement that included all relevant facts. The defendant complied.

Because Buchanan admitted to molesting K.B. when the family lived in Middletown, Lt. John Gatta (Lt. Gatta) of the Middletown Police Department was contacted and arrived at the Portsmouth station to interview defendant. This second interview—which lasted no more than a half hour—began by Lt. Gatta once again going over Buchanan's <u>Miranda</u> rights. Buchanan then proceeded to provide a verbal and a written statement to Lt. Gatta, again describing how, when the family resided in Middletown, he repeatedly molested K.B., including by digital

---

[3] The question of the voluntariness of defendant's statements to police is not before us on appeal.

penetration.

Buchanan subsequently was charged by criminal indictment with three counts of second-degree child molestation sexual assault in violation of § 11-37-8.3 and § 11-37-8.4. Specifically, count 1 detailed sexual contact—rubbing K.B.'s buttocks—on a date between April 1, 2000 and September 1, 2000 in the town of Portsmouth. Count 2 charged sexual contact, specifically, buttocks contact, and count 3 alleged breast contact, both occurring between January 1, 2002 and April 1, 2002 in Middletown. Finally, count 4 of the indictment charged first-degree child molestation sexual assault—digital penetration—in violation of § 11-37-8.1 and § 11-37-8.2, between January 1, 2002 and April 1, 2002 in Middletown.

Prior to trial, Buchanan sought pretrial in limine rulings to exclude evidence in accordance with Rule 404(b) of the Rhode Island Rules of Evidence. Specifically, Buchanan sought to prohibit evidence relating to instances of uncharged sexual misconduct. Defense counsel argued that, because the allegations charged in the indictment—and clarified in the bill of particulars—were limited to a two-year time frame, evidence of molestations occurring over a seven-year span would be unduly prejudicial.[4] This motion was granted in part; the trial justice ruled that evidence of any uncharged acts of molestation committed against K.B. would be limited to the time frame set forth in the indictment and the bill of particulars. The trial justice also ordered the redaction of any uncharged acts of molestation described in the letter from K.B.

_____

[4] Buchanan also sought to exclude evidence concerning a separate criminal case in which he was charged with committing three counts of second-degree child molestation upon an unrelated child while working as a school bus monitor in Middletown in 2002. Although the case resulted in Buchanan pleading nolo contendere to three amended charges of simple assault in 2003, defense counsel argued that introduction of such evidence also would be unduly prejudicial under Rule 403 of the Rhode Island Rules of Evidence. The trial justice ruled that the prosecution was prohibited from introducing evidence related to the earlier criminal case but left open the possibility that such evidence could be used for purposes of impeachment or rebuttal if introduced by the defense.

to her mother.[5]

However, on the morning of trial the state indicated that it had supplemented its discovery responses. According to the state, after a meeting with K.B. days earlier, K.B. disclosed additional acts of sexual molestation, including uncharged acts of digital penetration that occurred both after and during the time period listed in the indictment and bill of particulars.[6] The trial justice again prohibited the prosecution from introducing any evidence of uncharged acts of digital penetration; however, the court amended its earlier ruling to the limited extent that testimony and evidence related to conduct admitted by Buchanan in his verbal and written statements to police were admissible.

After the state rested its case, defense counsel's motion for judgment of acquittal on counts 2, 3, and 4 was denied by the trial justice. At the end of a five-day trial, the trial justice gave the following instructions concerning evidence of uncharged acts of sexual molestation:

> "Ladies and gentlemen, in this case you did hear evidence from the alleged victim, of conduct unrelated to these four offenses. Evidence of other acts or bad acts so-called, or crimes, may not be considered by you to prove that the defendant has a propensity for sexual offenses. Such evidence, however, is limited, [and] can be used by you for the limited purpose of determining whether the defendant was acting in the execution of a common plan or scheme of sexual assault against [K.B.]. So your evidentiary focus however, and your job here is to determine whether these four counts have been proven or not, by proof beyond a reasonable doubt."

The next morning, the jury returned a verdict of guilty on all counts contained in the indictment.

---

[5] The record discloses that the trial justice previously had ruled that the letter was admissible.

[6] At this meeting, K.B. also revealed she had kept a notebook—which she stored in her underwear drawer—containing journal entries detailing the sexual abuse she had suffered. A few days after her initial departure from the family home, she returned to collect the rest of her belongings and discovered that the notebook was missing. The trial justice ruled that testimony relating to the notebook was admissible but prohibited any questioning or speculation as to whether defendant was involved in its disappearance. This ruling has not been challenged on appeal.

The defendant filed a motion for a new trial that was heard and denied by the trial justice on August 31, 2011. On September 21, 2011, Buchanan was sentenced to twenty-five years at the Adult Correctional Institutions, with fifteen years to serve, ten years suspended, with probation, on counts 1, 2, and 3, and forty years, with twenty years to serve, twenty years suspended with probation on count 4—the charge of first-degree child molestation sexual assault.[7] The defendant filed a timely appeal to this Court and assigns three errors for our review.

### Testimony of Uncharged Sexual Misconduct

Before this Court, defendant argues that the trial justice erred in amending her prior in limine ruling and abused her discretion when she allowed evidence of uncharged sexual misconduct to be presented to the jury, in violation of Rule 404(b). We reject this argument.

It is well settled that Rule 404(b)[8] "generally prohibits the use of evidence of prior bad acts, wrongs, or crimes 'to show the defendant's propensity to commit the crime with which he is currently charged.'" State v. Dubois, 36 A.3d 191, 199 (R.I. 2012) (quoting State v. John, 881 A.2d 920, 926 (R.I. 2005)). It is also well established, however, that "[e]vidence of other conduct, even of a criminal nature, may be received if it is interwoven with the current charge in a way that tends to establish 'guilty knowledge, intent, motive, design, plan, scheme, system, or the like.'" Id. In fact, this Court has "permitted the introduction of 'other crimes' evidence when crimes are interwoven or in instances when introduction is necessary for 'a trier of fact to

---

[7] Buchanan was also ordered to receive sex offender counseling, register as a sex offender, and not contact K.B.

[8] Rule 404(b) of the Rhode Island Rules of Evidence states:

> "Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that defendant feared imminent bodily harm and that the fear was reasonable."

hear a complete and, it is to be hoped, coherent story so as to make an accurate determination of guilt or innocence.'" State v. Ciresi, 45 A.3d 1201, 1214 (R.I. 2012) (quoting State v. Pona, 948 A.2d 941, 950 (R.I. 2008)).

Accordingly, it is within the sound discretion of the trial justice to determine "whether this type of evidence should be admitted, excluded, or limited." Dubois, 36 A.3d at 200 (citing State v. Hopkins, 698 A.2d 183, 186 (R.I. 1997)). In so doing, the trial justice "must balance the relevance of the evidence against its remoteness and the potential for improper prejudicial impact." Id. If evidence that implicates prior sexual acts is admitted, the trial justice is required to provide a limiting instruction to the jury, and must also caution that the evidence may not be used "to prove defendant is a bad person or that he acted in conformity with the evidence." Id. at 201 (citing State v. Lamphere, 658 A.2d 900, 904 (R.I. 1995) and State v. Mohapatra, 880 A.2d 802, 806 (R.I. 2005)). This Court will not disturb a trial justice's ruling on the admissibility of so-called Rule 404(b) evidence "unless there has been a clear abuse of discretion and the evidence was both prejudicial and irrelevant." Id. at 199 (quoting State v. Merida, 960 A.2d 228, 237 (R.I. 2008)).

In this case, defendant filed a motion in limine seeking to prohibit the introduction of evidence of uncharged acts of molestation committed against K.B. which occurred during and after the time period specified in the indictment. Although the trial justice modified her earlier ruling to a limited extent—by allowing inquiry into acts described by defendant in his own statements to police—this Court repeatedly has stated that the grant or denial of a motion in limine is by no means a final ruling on the admissibility of the evidence addressed in the motion. Merida, 960 A.2d at 238. Because the inherent purpose of a motion in limine "is to 'prevent the proponent of potentially prejudicial matter from displaying it to the jury * * * in any manner

until the trial court has ruled upon its admissibility in the context of the trial itself[,]'" Ciresi, 45 A.3d at 1212 (quoting State v. Torres, 787 A.2d 1214, 1220 (R.I. 2002)), an in limine ruling is not final and a trial justice is vested with broad discretion to reconsider the ruling as the trial unfolds. Torres, 787 A.2d at 1220 (citing State v. Fernandes, 526 A.2d 495, 500 (R.I. 1987) (noting that it is not error per se when a trial justice reconsiders a prior in limine ruling)).

Our careful examination of the record reveals that defendant's argument clearly was not preserved for appeal. The record discloses that before opening statements, defense counsel notified the court that an objection would be raised to testimony proffered by K.B. concerning any uncharged acts of molestation. Counsel for defendant specifically told the trial justice, "Your Honor, I just wanted to state again for the record that we will be objecting to [K.B.] describing any uncharged prior bad acts of my client."

Although on appeal defendant contends that the phrase "we will be objecting" was a "poor choice of words," and insists that he was renewing an objection to the trial justice's "clearly definitive" in limine ruling, we disagree. The record reflects that no objection with respect to this testimony was forthcoming. Furthermore, defendant did not object when his statements to police—referencing uncharged acts of molestation—were introduced into evidence, nor during Chief Furtado's testimony about defendant's admissions. As a result, defendant's failure to properly preserve an objection to the proffered evidence precludes appellate review of this contention. See Ciresi, 45 A.3d at 1212 (noting that the well-established "'raise-or-waive' rule precludes a litigant from arguing an issue on appeal that has not been articulated at trial").

**Motion for Judgment of Acquittal
&
Motion for New Trial**

The defendant next argues that the trial justice erred in denying his motions for judgment of acquittal and for a new trial; he claims that the evidence presented at trial was insufficient to prove that the alleged crimes occurred within the time frame specified in the bill of particulars, or occurred at all when the family resided in Middletown.[9]  The defendant also maintains that comments made by the prosecutor concerning defendant's conduct while testifying—implying that he was looking to his lawyer while on the witness stand—warranted a new trial.  For the reasons explained below, we reject these arguments.

In reviewing a challenge to a trial justice's rulings on a motion for judgment of acquittal and a motion for a new trial, this Court "first conducts a review of the new-trial motion."  State v. Gaffney, 63 A.3d 888, 893 (R.I. 2013) (citing State v. Cardona, 969 A.2d 667, 672 (R.I. 2009)).  We do so because both motions simultaneously raise a "challenge to the [legal] sufficiency of the evidence," and thus, "we begin our review by 'conduct[ing] the more exacting analysis required for review of a ruling on a motion for a new trial.'"  Id. (quoting Cardona, 969 A.2d at 672).

When passing on a motion for a new trial, it is incumbent upon the trial justice to determine "whether the evidence adduced at trial is sufficient for the jury to conclude guilt beyond a reasonable doubt."  State v. Stone, 924 A.2d 773, 779 (R.I. 2007) (quoting State v.

---

[9]  The record reveals that despite defendant's use of the term "insufficient evidence," defendant's motion for a new trial—and the substance of the trial justice's decision denying the motion—was based on a challenge to the weight, not the insufficiency, of the evidence presented at trial.  On appeal, this Court employs a standard of review based on the weight of the evidence, which is also the standard advocated in defendant's brief.  See State v. Clark, 974 A.2d 558, 569-70 (R.I. 2009) (explaining the difference between the standard utilized when this Court reviews a motion for a new trial based on weight of the evidence, as opposed to insufficiency of the evidence).

<u>Scurry</u>, 636 A.2d 719, 725 (R.I. 1994)).  In doing so, the trial justice must "pass upon the weight and credibility of the evidence and accept or reject conflicting testimony and, in the exercise of his or her independent judgment, consider all of the material evidence in light of his or her charge to the jury * * *."  <u>State v. Stansell</u>, 909 A.2d 505, 511 (R.I. 2006) (quoting <u>State v. Hornoff</u>, 760 A.2d 927, 933 (R.I. 2000)).  "If, after conducting this independent review, the trial justice agrees with the jury's verdict or if the evidence is such that reasonable minds could differ as to the outcome, the motion for a new trial should be denied."  <u>State v. Otero</u>, 788 A.2d 469, 472 (R.I. 2002) (citing <u>State v. Marini</u>, 638 A.2d 507, 515-16 (R.I. 1994) and <u>State v. Clark</u>, 603 A.2d 1094, 1096 (R.I. 1992)).  Moreover, "[i]f the trial justice has complied with this procedure and articulated adequate reasons for denying the motion, his or her decision will be given great weight and left undisturbed unless the trial justice overlooked or misconceived material evidence or otherwise was clearly wrong."  <u>State v. Horton</u>, 871 A.2d 959, 967 (R.I. 2005) (quoting <u>State v. Gomez</u>, 848 A.2d 221, 234 (R.I. 2004)).

On appeal, defendant argues that the evidence presented at trial did not demonstrate that the crimes charged in counts 2 through 4 occurred within the time period specified in the bill of particulars, and before K.B. turned fourteen years old—a necessary prerequisite to a charge of both first- and second-degree child molestation sexual assault.[10]  The defendant also maintains that K.B.'s testimony was inconsistent and not credible and was therefore insufficient to prove any of the counts listed in the indictment.

Despite these contentions, however, the record reflects that the trial justice thoroughly

---

[10]  Regarding a charge of first-degree child molestation, G.L. 1956 § 11-37-8.1 specifically states that "[a] person is guilty of first degree child molestation sexual assault if he or she engages in sexual penetration with a person fourteen (14) years of age or under."  Similarly, § 11-37-8.3 clarifies that "[a] person is guilty of second degree child molestation sexual assault if he or she engages in sexual contact with another person fourteen (14) years of age or under."

reviewed K.B.'s testimony regarding the crimes charged in the indictment and set forth in the bill of particulars. The trial justice recounted how K.B. testified in great detail as to her age, her grade in school, and where the family was living from the time she met defendant until the molestations stopped when she turned seventeen. The trial justice also referenced the complainant's testimony as to the manner and timing of the abuse she endured, finding it to fit squarely within the time frame listed in the bill of particulars. Moreover, the trial justice specifically found that the girl's testimony "was nothing but credible," and noted that her testimony "could only emanate from someone who really and truly experienced and endured the assaults that she was subjected to." Finally, the trial justice declared that—even without taking into account the additional corroborative testimony of others and defendant's own confession—the charges against defendant were proven beyond a reasonable doubt based on K.B.'s testimony alone. Accordingly, we are satisfied that the trial justice conducted an appropriate review of the evidence presented at trial, did not overlook or misconceive material and relevant evidence, and provided sufficient reasoning to support her decision denying defendant's motion for a new trial.

We also deem unavailing defendant's contention that a new trial should have been granted based on comments made by the prosecutor concerning defendant looking at his attorney while testifying. Although the record reflects that—during the cross-examination of defendant—the prosecutor twice asked him why he was looking to his attorney before answering a question, the record also reveals that the trial justice admonished the prosecutor in the presence of the jury, and later gave a limiting instruction specifically requested by defendant concerning this perceived communication.[11] Notably, although defendant raised this issue before the trial justice

---

[11] After the second occasion when the prosecutor suggested that defendant was looking at counsel, the trial justice stated in open court, "[Prosecutor], this is his lawyer. They have a confidential relationship and you will refrain from any commentary regarding any interaction,

in the motion for the new trial, it is undisputed that defendant did not move to pass the case, nor did he pose an objection to the limiting instruction given by the trial justice. As a result, this Court's review is circumscribed. See State v. Garcia, 743 A.2d 1038, 1053 (R.I. 2000) (citing State v. Cianci, 430 A.2d 756, 765 (R.I. 1981) (explaining that counsel is required to object and direct the court to the specific portion of the instruction, or omission therefrom, that counsel finds objectionable, and to state the grounds for the objection in order to preserve for appellate review)).

Turning next to defendant's motion for judgment of acquittal, it is well settled that when passing on "a trial justice's denial of a motion for judgment of acquittal, this Court applies the same standard as the trial justice." State v. Long, 61 A.3d 439, 445 (R.I. 2013) (quoting State v. Lynch, 19 A.3d 51, 56 (R.I. 2011)). "A motion for a judgment of acquittal should be granted only if the evidence, viewed in the light most favorable to the prosecution, is insufficient to establish the defendant's guilt beyond a reasonable doubt." Id. (quoting State v. Heredia, 10 A.3d 443, 446 (R.I. 2010)). "If, however, a reasonable juror could find the defendant guilty beyond a reasonable doubt, the motion should be denied." Id. (quoting Heredia, 10 A.3d at 446).

In light of our analysis and opinion regarding the defendant's motion for a new trial, our analysis of the trial justice's denial of his motion for judgment of acquittal has been rendered unnecessary. Gaffney, 63 A.3d at 895 (citing Cardona, 969 A.2d at 672 (noting that when faced

---

whether it's merely what you perceive or not." The court's limiting instruction, which was requested by defendant, instructed the jury that it

> "was [the prosecutor's] perception that [defendant] looked at his lawyer. I don't know and nor do we care, but if he did, it's really none of our business. And I want to instruct you that you must draw no adverse inference from the fact that he may have or someone may have perceived him glancing at his attorney, if it ever happened during questioning."

The defendant did not object to this jury instruction.

with a challenge to rulings on both a motion for a new trial and for judgment of acquittal, this Court first conducts "the more exacting analysis required for review of a ruling on a motion for a new trial")).

## Conclusion

For the reasons set forth above, we affirm the Superior Court's judgment of conviction. The papers in this case may be remanded to the Superior Court.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**      State v. Christian Buchanan.

**CASE NO:**      No. 2012-230-C.A.
(N1/08-157A)

**COURT:**      Supreme Court

**DATE OPINION FILED:**   January 14, 2014

**JUSTICES:**      Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**      Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**    Newport County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Melanie Wilk Thunberg

**ATTORNEYS ON APPEAL:**

For State:  Christopher R. Bush
Department of Attorney General

For Defendant:  Katherine Godin, Esq.