January 9, 2019

**Supreme Court**

No. 2016-136-C.A.
(K1/14-568A)

State                              :

v.                               :

Jose Colon.                        :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at (401) 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                          :

v.                             :

Jose Colon.                    :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.**   This case came before the Supreme Court on

November 8, 2018, on appeal by the defendant, Jose Colon (defendant), from a judgment of

conviction entered in the Superior Court following a jury trial at which he was found guilty of

one count of first-degree child molestation sexual assault.

Before this Court, defendant argues that the Superior Court justice committed reversible

error in: (1) allowing testimony concerning other alleged incidents of sexual assault, in violation

of Rules 403 and 404(b) of the Rhode Island Rules of Evidence; (2) limiting defense counsel's

cross-examination of a witness; and (3) allowing hearsay testimony into evidence, which,

defendant argues, amounted to improper bolstering.  For the reasons set forth herein, we affirm

the judgment of conviction.

**Facts and Travel**

On April 19, 2013, the complaining witness, Chris (Chris or complainant),[1] then a young

adult, contacted the police department in Warwick, Rhode Island, to report that defendant, her

---

[1] The name of the complainant has been changed to protect her privacy.  Likewise, we also use pseudonyms for the complainant's sister and cousin.

uncle, had sexually abused her when she was six years old.[2]  According to her testimony at trial, Chris was motivated to file a complaint at that time because she "didn't want anyone else to get hurt."  On September 17, 2014, an indictment was returned, charging defendant with one count of first-degree child molestation sexual assault, in violation of G.L. 1956 §§ 11-37-8.1 and 11-37-8.2.

The conduct giving rise to the indictment occurred during a sleepover at defendant's home in August 2001.  Chris, who was six years old, and her cousin—defendant's daughter—Kara, who was four years old at the time, were sleeping in Kara's bed, which was located in defendant's bedroom.  Chris testified that defendant, wearing only a towel around his waist, entered the room, locked the door, and then proceeded to remove Chris's pants, "lick his fingers and then started touching" her, putting his fingers "[i]n [her] vagina."  When Chris's aunt Marilyn Colon (Marilyn), defendant's wife, knocked on the door, defendant stopped, quickly threw a bedsheet over Chris, and opened the door.  Chris testified that she pretended to be asleep while defendant was touching her, but that she "was confused" and "didn't really know what was going on."  Initially, Chris did not tell anyone what happened, and years would pass before she began speaking about the incident, first with her cousins, then her mother, and eventually, to the police.

When she was between ten and twelve years old, Chris disclosed the assault to her cousins, Kara and Kara's sister, but she decided not to tell her mother because she "didn't want for [her cousins] to lose their dad and for the whole family to just destroy."  According to Chris, the family was very close and defendant was "basically [her] father" when she was growing up.

---

[2] The individuals involved in this case are members of defendant's family:  Kara is defendant's daughter; sisters Chris and Zoe are defendant's nieces by his marriage to Marilyn Colon; Marilyn Colon's sister is Chris and Zoe's mother.

A few years later, when she was fourteen, Chris confided in her then-boyfriend, Angel Vigo (Vigo), who, unbeknownst to Chris, told a family friend about what Chris had told him. The family friend relayed this information to Chris's mother, who confronted her daughter; Chris confirmed the allegation. Chris's mother convened a family meeting to confront Marilyn and defendant with the abuse allegation. Marilyn and defendant denied the accusation, and the families subsequently became estranged. The police were not contacted at that time.

Time passed, Kara and Chris eventually reconnected, and Chris learned from Kara that defendant had sexually abused her as well as Chris's younger sister, Zoe. This information was the catalyst that initiated a chain of events which culminated in this prosecution.

Prior to trial, on October 15, 2015, the trial justice heard several motions *in limine*, including the state's motion to allow the testimony of Kara and Zoe under Rule 404(b); the state argued that the evidence established defendant's "common plan or scheme" to molest young female relatives.[3] The state also contended that the Rule 404(b) evidence was necessary for the prosecution because the allegations by Zoe and Kara were so inextricably interwoven with the crime alleged and explained the circumstances surrounding Chris's belated, but eventual, disclosure of the abuse by defendant. Defense counsel countered that the Rule 404(b) evidence was not necessary to satisfy the state's burden of proof and was unfairly prejudicial. The trial justice granted the state's motion *in limine*, but explicitly notified counsel that he would be prepared to revisit the issue at trial and invited defense counsel to renew his objections accordingly. The trial justice noted:

---

[3] The defendant also filed a motion *in limine* seeking to conduct an individual voir dire of Zoe prior to her testifying before the jury. Although the trial justice ruled that an individual voir dire of Zoe was unnecessary, we submit that, in the context of this case, a voir dire of this witness may have been helpful.

"But I want to be very clear, barring that I'm going to grant the [s]tate's motion with a couple of caveats. First of all, you can raise the issue again after the complaining witness testifies. And, number two, depending on what is said on the witness stand, the [c]ourt will be willing to review, because once there is evidence in, it may be another determination for the next witness in terms of whether the prejudicial effect is outweighed."

When Kara and Zoe later testified at trial regarding allegations that defendant had also touched them inappropriately, defendant failed to raise any objection.

Before Zoe took the stand to testify at trial, the trial justice instructed the jury that the conduct about which the witness would testify was not to be used as propensity evidence and was admissible "for the limited purpose of this defendant's intent, motive, opportunity, preparation, plan, knowledge, identity with respect to this case, but for no other purpose."[4] Zoe was asked on direct examination by the prosecutor to recall an incident that occurred when she was eight or nine years old, during a New Year's Eve party at defendant's house. Zoe testified that she and Kara, who was eleven or twelve years old at the time, were asleep in defendant's bedroom when defendant entered, pulled down Zoe's pants, and "started touching [her] private

---

[4] The trial justice's full instruction to the jury stated:

"Ladies and gentlemen of the jury, again we are back to a witness that may have certain direct testimony in terms of what she saw, heard, or observed with respect to the case that is before you. There also would be a fair amount of evidence, which, again, is not propensity evidence, which is not if you believe it, it does not necessarily mean that this incident occurred.

"Again, as I told you before, you can consider that evidence for the limited purpose of this defendant's intent, motive, opportunity, preparation, plan, knowledge, identity with respect to this case, but for no other purpose.

"Again, I gave you the example of a bank robber very early on. Just because there is other evidence cannot be used for the jury [*sic*] that because someone may have done something or is alleged to have done something before that he absolutely did it in this case."

spot." She testified that, while this was happening, she reached for Kara's hand and the two held hands. After defendant left, Kara pleaded with Zoe not to say anything. It was not until several years later, when Chris confronted her, that Zoe confirmed the incident. Chris testified that it was this disclosure that prompted her to notify the police, so that no one else could be hurt.

Kara, on the other hand, testified that, although she previously had made statements to police indicating that defendant had touched Zoe at the New Year's Eve party, she recanted those statements to defense counsel on the eve of trial. She admitted that "someone" had gotten into the bed, laid down, and touched Zoe "in a very inappropriate way" that night, but claimed that it was not her father. According to Kara's testimony, she merely reported what Chris told her had occurred. Kara explained that she initially stated that it was defendant because that was "what [her] cousin had told [her.]" Kara similarly recanted an allegation she had made to police that defendant had molested her when she was five or six years old. On cross-examination, defense counsel asked Kara why she fabricated these stories. She responded, "From what I was told," and she was subsequently asked, "By whom?" The state objected, and the trial justice sustained the objection but allowed Kara's response "From what I was told" to remain on the record. Defense counsel later returned to this line of questioning when he asked Kara why she made false allegations against defendant to her physician. Kara began to answer, but the state objected. The trial justice sustained the state's objection.

The state also called Chris's former boyfriend, Vigo, and asked him to recall what Chris had confessed to him when she was fourteen years old regarding her uncle. The defendant objected, and the state responded by asserting that the statement was admissible as a "prior inconsistent statement" of the complainant. The defendant's objection was overruled, and Vigo testified that "[t]he confession was she was molested by her uncle."

- 5 -

After a five-day jury trial, defendant was found guilty of one count of first-degree child molestation sexual assault. The trial justice denied defendant's motion for a new trial and sentenced defendant to a term of fifty years in prison, with thirty-five years to serve and the balance suspended, with probation. The defendant timely appealed.

## Analysis

### Testimony of Other Sexual Misconduct

Before this Court, defendant argues that the trial justice erred by allowing evidence of other alleged sexual misconduct by defendant to be presented to the jury through the testimony of Zoe, in violation of Rules 403 and 404(b). We disagree.

It is well established that "Rule 404(b)[ ] generally prohibits the use of evidence of prior bad acts, wrongs, or crimes 'to show the defendant's propensity to commit the crime with which he is currently charged.'" *State v. Dubois*, 36 A.3d 191, 199 (R.I. 2012) (quoting *State v. John*, 881 A.2d 920, 926 (R.I. 2005)). However, it is also well recognized that "[e]vidence of other conduct, even of a criminal nature, may be received if it is interwoven with the current charge in a way that tends to establish guilty knowledge, intent, motive, design, plan, scheme, system, or the like." *Id.* (quoting *John*, 881 A.2d at 926). This Court has "permitted the introduction of other crimes evidence when crimes are interwoven or in instances when introduction is necessary for a trier of fact to hear a complete and * * * coherent story so as to make an accurate determination of guilt or innocence." *State v. Ciresi*, 45 A.3d 1201, 1214 (R.I. 2012) (quoting *State v. Pona*, 948 A.2d 941, 950 (R.I. 2008)).

Accordingly, "it is within the sound discretion of the trial justice to determine 'whether this type of evidence should be admitted, excluded, or limited.'" *State v. Buchanan*, 81 A.3d 1119, 1125 (R.I. 2014) (quoting *Dubois*, 36 A.3d at 200). In exercising that discretion, the trial justice balances the relevance of the evidence against its potential prejudicial effect on the

factfinder. *See Ciresi*, 45 A.3d at 1211. When the scale tips in favor of admitting testimony of other sexual acts into evidence, "the trial justice must offer a limiting instruction to guide the jury's consideration of the evidence * * * and caution that it not be used to prove defendant is a bad person or that he acted in conformity with the evidence." *Dubois*, 36 A.3d at 201. Correspondingly, this Court will not disturb a trial justice's ruling on the admissibility of Rule 404(b) evidence unless the probative value was substantially outweighed by the prejudicial effect of the evidence and there was a clear abuse of discretion. *See Ciresi*, 45 A.3d at 1211.

As noted above, the state filed a motion *in limine* seeking to introduce evidence of allegations of sexual misconduct committed by defendant against Zoe. Although the trial justice granted the state's motion, his ruling was not final. This Court has firmly held that a trial justice's rulings on motions *in limine* are preliminary in nature. *See Buchanan*, 81 A.3d at 1126 (recognizing that "the grant or denial of a motion *in limine* is by no means a final ruling on the admissibility of the evidence addressed in the motion"). "[T]he inherent purpose of a motion *in limine* 'is to prevent the proponent of potentially prejudicial matter from displaying it to the jury * * * in any manner until the trial court has ruled upon its admissibility in the context of the trial itself[.]'" *Id.* (quoting *Ciresi*, 45 A.3d at 1212). As such, "an *in limine* ruling is not final and a trial justice is vested with broad discretion to reconsider the ruling as the trial unfolds." *Id.* Accordingly, it is incumbent upon counsel to raise "timely and appropriate" evidentiary objections throughout the trial in order to preserve the issues for appeal. *Ciresi*, 45 A.3d at 1212 (quoting *In re Jazlyn P.*, 31 A.3d 1273, 1280 (R.I. 2011)).

In this case, when ruling on the state's motion *in limine*, the trial justice explicitly stated that he would be willing to review his ruling on the motion at trial, and he invited defendant to raise the issue again during the trial testimony, signifying the preliminary nature of his ruling.

However, although defendant had objected to and argued against the state's motion during the pretrial proceedings, he failed to object when statements referencing the other alleged acts of molestation against Zoe were introduced into evidence, and he failed to object when Zoe testified that defendant had touched her on New Year's Eve when she was eight or nine years old.[5]

A careful review of the trial transcripts discloses that, after Zoe had testified, the state called Amy P. Goldberg, M.D. (Dr. Goldberg), who testified as an expert in child-abuse pediatrics. Defense counsel objected to testimony relating to Zoe's medical history obtained by Dr. Goldberg. Defense counsel told the trial justice:

> "Your Honor, at this point I think I will forward an objection based upon the fact that we are intertwining [Chris] and [Zoe]. With regard to [Zoe], your Honor, I believe, I still have a 403 objection and I believe that at this time I will enforce that 403 objection with regard to this witness."

A sidebar conference was held, at which defense counsel argued:

> "* * * You have been clear about the 403 with regard to [Zoe], with regard to [Kara] and their testimony, your Honor, but at this point now we're having a third person testifying about the same incidents. * * * The [s]tate has been able to explore this through direct testimony. Now, they're getting additional testimony."[6]

We are therefore satisfied that defendant's objection with respect to any Rule 404(b) evidence was not preserved for appeal.

Further, it is apparent that Zoe's allegations were so intertwined with the complainant's allegations and the circumstances surrounding the complainant's inevitable disclosure to the

---

[5] Before Zoe testified, a sidebar conference occurred that was not recorded. There is nothing before us to suggest that defendant at that time renewed his Rule 404(b) objection with respect to any of Zoe's testimony.

[6] The trial justice ultimately ruled that the probative value of Zoe's medical history outweighed its prejudicial effect and admitted the evidence. Following direct examination of Dr. Goldberg, the trial justice administered a cautionary instruction to the jury on the limited purpose for which Dr. Goldberg's testimony could be considered.

police that the evidence was necessary for a coherent chronology of the events in this case. Correspondingly, an examination of the record shows that the trial justice, on six separate occasions, including immediately before Zoe testified, complied with his obligation to provide the jury with a limiting instruction about the use of such evidence. *See Dubois*, 36 A.3d at 201. The defendant did not object to the instructions, nor did he renew his Rule 404(b) argument during the trial. Moreover, Zoe's testimony proved fruitful grounds for defendant's closing argument, during which defense counsel relied on Zoe's testimony to attempt to undermine the credibility of the complainant.

Accordingly, because there was no objection to the proffered testimony, we deem defendant's argument waived. *See Ciresi*, 45 A.3d at 1212 (noting that "the 'raise-or-waive' rule precludes a litigant from arguing an issue on appeal that has not been articulated at trial") (quoting *State v. Brown*, 9 A.3d 1240, 1245 (R.I. 2010)).

### Limited Witness Testimony

Next, defendant argues that the trial justice erred when he sustained the state's objections to questions posed to Kara by defense counsel on cross-examination that pertained to her initial allegations and later recantation about abuse by her father. On appeal, defendant suggests that he was attempting to proceed on a theory that someone else had influenced Kara to make the initial false reports. This argument is without merit.

"This Court repeatedly has recognized the well-established, constitutionally-protected right of a criminal defendant to effective cross-examination of the prosecution's witnesses." *Dubois*, 36 A.3d at 198. However, "[t]his right is not absolute[.]" *Id.* "When we review a contention that a defendant's right to cross-examination erroneously was limited by the trial justice, we look to whether the trial justice clearly abused his or her discretion when limiting the

scope of the cross-examination." *State v. Moore*, 154 A.3d 472, 485 (R.I. 2017) (quoting *State v. Alston*, 47 A.3d 234, 249 (R.I. 2012)).

Here, defendant asserts that the jury was confronted with two discrete questions—namely, why Kara made the false reports and, correspondingly, who influenced her to make them. Yet, an inspection of the record reveals that, when the state objected to defense counsel's questioning of Kara as to why she made the reports in the first instance, defendant failed to rephrase the questions or make an offer of proof that the testimony he intended to elicit would have led to relevant evidence, and instead simply moved on. *See Moore*, 154 A.3d at 485 (upholding the trial justice's limitation of cross-examination because the defendant failed to make an offer of proof that further cross-examination would have elicited relevant evidence); *Alston*, 47 A.3d at 249 (same). In any event, we are hard-pressed to see how this evidence was relevant and important to defendant at trial because, instead of specifying the purpose for which he was asking these questions or attempting to rephrase the questions, defense counsel simply moved on to another line of inquiry. *See State v. Hazard*, 785 A.2d 1111, 1116 (R.I. 2001) (holding that the defendant had failed to preserve his objection to evidentiary rulings for this Court's review where defense counsel "simply moved on to his next cross-examination question without even indicating what answers he expected to receive"). Accordingly, defendant has failed to preserve his objection to these evidentiary rulings for our review on appeal.

We pause to note, however, that an exception to the raise-or-waive rule exists for issues involving a basic constitutional right. Accordingly, even if the trial justice's decision to limit cross-examination was erroneous, it nonetheless would not constitute reversible error "if the error was harmless beyond a reasonable doubt." *Hazard*, 785 A.2d at 1116. In determining harmless error, this Court looks to the following factors: "the importance of the witness's

testimony; whether the testimony was cumulative; the presence or absence of evidence corroborating or contradicting the witness's testimony on material points; the extent of cross-examination otherwise permitted; and the overall strength of the prosecution's case." *Id.*

Were we to conclude that the trial justice erred in the present case, such error would have been harmless beyond a reasonable doubt because, although Kara was prevented from expressly identifying Chris as the alleged catalyst for her disclosure, this fact was readily apparent from Kara's earlier testimony. For example, when Kara was asked whether she told the police what she remembered, she responded, "I told them what [Chris] had told me when I was younger." When similarly asked about a statement she gave to a doctor, Kara responded, "[Chris] told me what had happened to me so I repeated it to the doctor."[7] Notably, in his closing argument, defense counsel outwardly exploited this inference, stating that Kara had "incorporated the story that [Chris] had developed because [Chris] told her that's what happened." For this reason, we hold that, even if defendant had properly preserved his objections, the evidence defendant sought to elicit from Kara was merely cumulative.

### Rule 801(d)(1)(A) of the Rhode Island Rules of Evidence

Lastly, defendant contends that the trial justice erred when he permitted Chris's former boyfriend, Vigo, to testify about the complainant's disclosure that she was molested by her uncle. Specifically, defendant argues that the trial justice committed reversible error when he allowed Vigo to recount Chris's disclosure after the prosecutor indicated that the evidence was offered as a prior inconsistent statement of the complainant under Rule 801(d)(1)(A). The defendant argues that this evidence amounted to improper bolstering. We disagree.

---

[7] The bracketed alterations here indicate instances where Kara used the complainant's actual name, and we have substituted the pseudonym.

As explicated above, "we review a trial justice's evidentiary rulings under an abuse of discretion rubric, and will not overturn a trial justice's decision with respect to evidentiary issues unless it constitutes an abuse of that discretion and prejudices the complaining party." *State v. Florez*, 138 A.3d 789, 793 (R.I. 2016). We are "disinclined to perceive an abuse of discretion so long as the record contains some grounds for supporting the trial justice's decision * * *." *State v. Cavanaugh*, 158 A.3d 268, 279 (R.I. 2017) (quoting *State v. Clay*, 79 A.3d 832, 838 (R.I 2013)).

We conclude that this argument was also not properly preserved for appellate review. On direct examination, the prosecutor asked Vigo what Chris had confessed to him about her uncle when she was approximately fourteen years old. At that point, defense counsel stated, "Objection, your Honor." Counsel failed to articulate any ground for the objection and simply proffered a general objection to the question. It was the prosecutor who responded with a non-hearsay ground for admissibility, stating, "Judge, prior inconsistent statement." Defense counsel never indicated why the question was improper and, in particular, failed to assert at the trial level what defendant now contends on appeal, that it was impermissible bolstering.

In accordance with our well-settled "'raise or waive rule,' a litigant must make a timely and appropriate objection during the lower court proceedings before this Court will indulge the issue on appeal." *State v. Grant*, 840 A.2d 541, 546 (R.I. 2004) (quoting *State v. Toole*, 640 A.2d 965, 972 (R.I. 1994)). Furthermore, when an evidentiary issue is raised on appeal, Rule 103(a)(1) of the Rhode Island Rules of Evidence explicitly provides that a finding of error must be based upon "a timely objection or motion to strike * * * of record, *stating the specific ground of objection*, if the specific ground was not apparent from the context." *State v. Feliciano*, 901 A.2d 631, 646 (R.I. 2006) (emphasis added). On several occasions we have held that "issues that

- 12 -

were not preserved by a specific objection at trial, sufficiently focused so as to call the trial justice's attention to the basis for said objection, may not be considered on appeal." *State v. Bettencourt*, 723 A.2d 1101, 1107 (R.I. 1999) (quoting *Toole*, 640 A.2d at 972-73); *see State v. Cook*, 45 A.3d 1272, 1279 (R.I. 2012); *State v. Merced*, 933 A.2d 172, 174 (R.I. 2007). As such, "[g]eneral objections to the admissibility of evidence, when the context does not supply the specific ground for the objection, are thus insufficient to preserve the issue under Rule 103(a)(1)." *Feliciano*, 901 A.2d at 646.

In the case at bar, the defendant's general objection failed to adequately alert the trial justice as to the basis for his concern regarding the admissibility of Vigo's testimony. Similarly, the context surrounding the defendant's objection also failed to supply the specific ground for the objection. For this reason, the objection was insufficient to preserve the argument for appeal. Accordingly, we deem the defendant's argument waived.

## Conclusion

For the reasons set forth above, we affirm the Superior Court's judgment of conviction. The papers in this case may be remanded to the Superior Court.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Jose Colon. |
| **Case Number** | No. 2016-136-C.A. (K1/14-568A) |
| **Date Opinion Filed** | January 9, 2019 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Kent County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Brian P. Stern |
| **Attorney(s) on Appeal** | For State:<br><br>Owen Murphy<br>Department of Attorney General |
| | For Defendant:<br><br>Thomas M. Dickinson, Esq. |

SU-CMS-02A (revised June 2016)