Issued June 30, 2020

Corrected June 30, 2020

**Supreme Court**

No. 2018-241-C.A.
(P1/16-941A)

State                              :

        v.                         :

Joseph Lamontagne.                 :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

**Supreme Court**

No. 2018-241-C.A.
(P1/16-941A)
(Concurrence begins on page 13)
(Dissent begins on page 15)

|  |  |
|---|---|
| State | : |
| v. | : |
| Joseph Lamontagne. | : |

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.**  The defendant, Joseph Lamontagne, was convicted by a jury of one count of first-degree robbery, in violation of G.L. 1956 § 11-39-1(a), and one count of assault with a dangerous weapon in a dwelling with intent to rob, in violation of G.L. 1956 § 11-5-4.  He was sentenced to two concurrent terms of thirty-five years at the Adult Correctional Institutions, with twenty-three years to serve and the balance suspended, with probation.

On appeal, Lamontagne contends that the trial justice committed two errors, each of which, he maintains, entitles him to have his convictions vacated and be granted a new trial.  First, defendant avers that the trial justice erred in excluding evidence of the complaining witness's prior convictions.  Second, he argues that the trial justice erred in excluding photographic evidence depicting injuries defendant allegedly suffered during the underlying incident.

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

- 1 -

# I

## Facts and Travel

The scene of the robbery and assault at issue in this case is an apartment building often referred to as the "mansion," an appellation evocative of its former grandeur. Built in 1840 by prominent Woonsocket businessman James Arnold, it has since, in the trial justice's words, "been chopped up into small rental units, some occupied by the underbelly of society." It is perhaps a fitting metaphor for this case. The defendant is an honorably-discharged veteran of the Vietnam War, in which he served on a helicopter rescuing wounded soldiers from the battlefield. After returning home, he attended college, raised a family, and was a well-respected member of his community. Unfortunately, he suffered from anxiety and depression as a result of post-traumatic stress disorder (PTSD). Indeed, he was on a break from a PTSD program when he had occasion to visit the "mansion" and the events underlying the indictment transpired.

The charges against defendant turned in large measure upon the credibility of the complaining witness, Cheryl Cacciato. Cacciato lived in a small, L-shaped apartment at the "mansion" with Donna Vanmoerkerque, their beds separated by a sheet affording them a modicum of privacy in the small apartment. Cacciato's boyfriend, Kevin Miller, was also a frequent overnight resident.

Vanmoerkerque testified that, on December 27, 2015, she visited a friend who lived in an apartment located down the hall from her own. She testified that defendant and her friend's husband, Don, were also in the apartment. She further testified that defendant asked Don where he could get some crack cocaine. According to Vanmoerkerque, Don replied that her (Vanmoerkerque's) friend sold it, at which point defendant and Vanmoerkerque left and walked to the latter's apartment.

Vanmoerkerque continued her testimony, stating that when she and defendant arrived at her apartment, they sat down at the kitchen table. Cacciato was also present, sitting on her bed behind the sheet. A short while later, Vanmoerkerque testified, Miller entered the apartment and said to Cacciato, "Honey, here is the rent. I want $20 to go to the liquor store." Shortly thereafter, Miller left the apartment. On cross-examination, Vanmoerkerque admitted that she had not actually seen Miller give any money to Cacciato. According to Vanmoerkerque, after another fifteen to twenty minutes, she asked defendant, "What do you want?" She testified that defendant replied, "I want a hundred dollar piece." Cacciato offered that she had the requisite inventory, and Vanmoerkerque announced, "I'm going to walk the dogs."

It was further Vanmoerkerque's testimony that she left the apartment for approximately seven or eight minutes and that, as she returned, she "heard this loud smack come from within [her] apartment[.]" She ran into the apartment, saw that the kitchen table had been overturned, and observed defendant "sitting on top of [Cacciato] smashing her head with a stone" the size of a "very big boulder[.]" She said she picked up defendant and threw him off Cacciato. She testified that Cacciato appeared to be unconscious and her face was covered in blood. She asked defendant, "Why are you doing this?" He replied, "She tried to rob me."

Vanmoerkerque testified that defendant tried to get back at Cacciato three times, but Vanmoerkerque was able to fend him off. She told defendant that she was calling the police, whereupon defendant said, "I don't know why you're calling the police. I am the police." Vanmoerkerque stayed with defendant after he left the apartment and until the police arrived and arrested him.

Cheryl Cacciato offered a somewhat different version of the salient events that occurred at the "mansion" on December 27, 2015. Cacciato acknowledged under oath that she supplemented

her fixed disability income by selling drugs and that she was an addict herself. She testified that on the evening in question she, Miller, and Vanmoerkerque were in her apartment when defendant knocked at the door. He entered and sat at the kitchen table with Vanmoerkerque; Cacciato was sitting on her bed watching television, and Miller was talking with her. She testified that she handed Miller $20 from money she had set aside for rent. She also testified that she counted the remaining $325, folded it in half twice, secured it with a rubber band, and placed it in the front left pocket of her shirt. Miller then left, as did Vanmoerkerque shortly thereafter to walk the dogs, leaving defendant and Cacciato alone in the apartment.

In her testimony, Cacciato denied ever discussing a drug deal with defendant that evening. Rather, she testified that defendant stood up from the table, walked toward the entrance to the apartment, and then she was hit in the head twice with a hard object that appeared to be an "asphalt chunk of rock." She began to bleed. After the second hit, she continued, she fell off the bed onto the ground, at which point defendant stood over her, reached down, and took the money out of her shirt pocket, saying, "I'll take this. You won't be needing it." Cacciato testified that defendant hit her several more times with the rock, proclaiming, "I'm a cop. You're a drug dealer. You're going to get busted." She said she tried to scream for help but "had laryngitis [and] couldn't scream[.]" She also tried to grab a switchblade knife that she kept "open and wedged in the hinge of [her] closet door."

Cacciato also testified that she struggled to stand, but kept slipping because of the blood on the floor: "I just couldn't get any traction." Using the bed frame, she pulled herself toward the door of the apartment; all the while, defendant kept going after her. She testified that she tried to throw a chair at him and tipped the kitchen table over. She further testified that defendant straddled

her, sat on top of her, and he grabbed her "by the throat with his left hand, and with the right" tried to hit her with the rock, saying, "Don't worry. This will all be over real soon."

At this juncture, according to Cacciato, Vanmoerkerque reentered the apartment. Contrary to the latter's testimony, Cacciato testified that at that point defendant did not hit her anymore. Rather, he stood up and told Vanmoerkerque to retrieve the rock that Cacciato had previously knocked out of his hand. She testified that he then left the apartment and Vanmoerkerque followed him.

Officer Jeffrey Gagnon testified at trial that he was a member of the Woonsocket Police Department on the day of the incident and he arrived on the scene and proceeded inside the apartment. He observed Cacciato "bleeding from the head" with a large kitchen knife in her hand. He also observed a rock "slightly larger than a softball" in the kitchen sink. Officer Daniel Lajoie also responded to the incident. He described "blood covering the floor" of the apartment and Cacciato's hair as "saturated" in blood. He testified that, as he was transporting defendant from the scene to the police station in the police car, defendant said: "I only hit that stupid bitch because she was trying to get at me. I was only trying to protect myself."

Detective Gabriel Koneczny[1] testified that he also responded to the "mansion" that evening and that defendant gave him $325 that he had in his pocket at the scene. The money consisted of sixteen $20 bills and five $1 bills.

Lamontagne presented one witness, Jamie Silva, his daughter. She testified that she had given defendant $350 on the afternoon of the incident because he needed money "for food and whatever he needed."

---

[1] Detective Koneczny testified that he was a patrolman at the time of the events described herein.

As Cheryl Cacciato was the only percipient witness to the alleged assault and robbery, her credibility was critical to the prosecution. In an effort to prevent defendant from eroding her credibility by the admission of four of her prior criminal convictions, the state filed, before the commencement of trial, a motion *in limine* seeking to exclude evidence of her convictions for (1) domestic disorderly conduct in 2012, which was disposed of in 2013, (2) resisting arrest in 2012, which was disposed of in 2013, (3) violation of a no-contact order in 2012, and (4) driving under the influence in 2009. At a hearing on April 17, 2017, the trial justice excluded the convictions for the violation of a no-contact order in 2012 and driving under the influence in 2009. The defendant indicated that he wished to use the remaining two convictions to impeach Cacciato's credibility under Rule 609 of the Rhode Island Rules of Evidence and to show "a violent propensity on the part of this complaining witness" to support his claim of self-defense. The trial justice ruled that these two convictions might be introduced for Rule 609 purposes.

The trial justice revisited her ruling, however, on the second day of trial—after both Cacciato and Vanmoerkerque had testified but before Cacciato had a chance to complete her testimony. The trial justice reasoned that, because both of those witnesses had testified to their illegal drug use as well as Cacciato's drug dealing, "the jury ha[d] heard enough about their conduct to take that prior current criminal conduct into consideration when determining the credibility."

With respect to the conviction for domestic disorderly conduct, the trial justice held that it was "a petty misdemeanor and * * * [Rule] 609 addresses the felonies and misdemeanor." She granted the state's motion *in limine* to preclude the introduction of that conviction. Turning to the conviction for resisting arrest, the trial justice characterized it as "pile-on[,]" stating that there was "enough evidence of criminal conduct that's unrelated to the self-defense issue that the jury can

- 6 -

certainly evaluate her credibility giving due consideration to her lifestyle and the fact that she is not a law-abiding productive member of the community, unless you consider dealing crack cocaine productive." She also stated that evidence of this prior conviction would be "unduly confusing and prejudicial."

Prior to the close of his evidence, Lamontagne sought to introduce photographs depicting two "bruise like mark[s]" on his torso—one near his navel and one at the base of his right shoulder blade. The photographs were apparently taken on January 8, 2016, nearly two weeks after the incident at the "mansion," by a state-employed investigator, Oscar Beltran. The state objected to the photographs being entered into evidence "under relevance grounds and the grounds articulated in [Rule] 403." The photographs were marked for identification. Outside of the presence of the jury, defendant called Beltran to the stand to provide an "offer of proof" that the photographs and Beltran's supporting testimony should be presented to the jury. Beltran confirmed that he was an investigator for the State of Rhode Island, that he took the photographs of defendant on January 8, 2016, and that the photographs were a fair and accurate representation of defendant on that day.

After reviewing the photographs, listening to and considering Beltran's testimony, and reviewing a hospital report from the evening of December 27, 2015, the trial justice reasoned that, without defendant's testimony,

> "there [would] be no evidence whatsoever as to how and when [defendant] sustained these injuries because the hospital record doesn't support these particular injuries, and there's no evidence that would suggest these injuries were sustained in Apartment 7 in [the] late afternoon, early evening hours of December 27, 2015. There was a two-week gap, * * * during which time he was at the ACI."

The trial justice further stated that "[t]here [was] not sufficient evidence as to when and how he sustained these injuries. The only evidence we have is that on the date the photographs were taken, these photographs are a fair and accurate depiction on how he looked on that particular date." She

also found that the hospital record, which was introduced as a full exhibit at trial, had "no reference to any pain in [the abdomen] area" and that the same record described defendant's abdomen as "soft and non-tender" on December 27, 2015. Lastly, the trial justice concluded that defendant's statement that he "only hit that stupid bitch because she was trying to get at me. I was only trying to protect myself" provided an insufficient nexus between the injuries depicted in the photographs and the alleged assault that defendant claims to have suffered at Cacciato's hands. Therefore, the trial justice sustained the state's objection to the admission of this evidence.

The jury returned a guilty verdict on both counts on April 25, 2017, and defendant was sentenced on July 18, 2017. The defendant filed a notice of appeal on June 2, 2017.[2] The judgment of conviction entered on December 18, 2018.

## II

## Standard of Review

It is well established that "the trial justice is vested with a considerable degree of discretion in deciding whether or not to admit evidence of prior convictions to impeach a witness." *State v. Gongoleski*, 14 A.3d 218, 222 (R.I. 2011) (brackets omitted) (quoting *State v. Remy*, 910 A.2d 793, 796 (R.I. 2006)). Thus, "this Court will not overturn such a decision on appeal unless there has been an abuse of that discretion." *Id*. (quoting *Remy*, 910 A.2d at 797); *see State v. Vargas*, 991 A.2d 1056, 1060 (R.I. 2010); *State v. Gillespie*, 960 A.2d 969, 980 (R.I. 2008); *State v. Silvia*, 898 A.2d 707, 718 (R.I. 2006). "Accordingly, we may uphold a trial justice's ruling even if we

---

[2] The defendant filed his notice of appeal prior to the entry of the judgment of conviction. "[I]t is well settled that a premature notice of appeal will be considered 'timely so long as a final judgment is entered thereafter.'" *State v. Souto*, 210 A.3d 409, 415 n.8 (R.I. 2019) (quoting *State v. Austin*, 114 A.3d 87, 94 n.9 (R.I. 2015)).

would have ruled differently had we been in the trial justice's position." *Id.* (quoting *Gillespie*, 960 A.2d at 980).

### III

### Analysis

### A

### Admissibility of Ms. Cacciato's Prior Convictions Under Rule 609

On appeal, defendant argues that the trial justice abused her discretion by excluding Cacciato's prior criminal convictions because, for both convictions, the probative value was not substantially outweighed by the danger of unfair prejudice. The defendant maintains that the trial justice's ruling "limited * * * Lamontagne's ability to cross-examine his accuser" in a "case that hinged on" Cacciato's credibility. Lamontagne also contends that the trial justice could have remedied any potential prejudice with a limiting instruction indicating that "the prior convictions could only be considered for assessing Cacciato's credibility." Additionally, defendant argues that the trial justice abused her discretion in excluding Cacciato's conviction for domestic disorderly conduct on the sole basis that it was a "petty" misdemeanor. He contends that there is no "carve out" in Rule 609 or in Rhode Island caselaw for "an exception for convictions involving petty misdemeanors" and that, consequently, the trial justice should have conducted a Rule 403 balancing test before excluding this evidence.

"This Court repeatedly has stated that the grant or denial of a motion *in limine* is by no means a final ruling on the admissibility of the evidence addressed in the motion[.]" *State v. Mensah*, 227 A.3d 474, 483 (R.I. 2020) (brackets omitted) (quoting *State v. Buchanan*, 81 A.3d 1119, 1126 (R.I. 2014)). Furthermore, such a ruling is "preliminary in nature." *Id.* (brackets omitted) (quoting *State v. Colon*, 198 A.3d 1249, 1255 (R.I. 2019)). "The inherent purpose of a

motion *in limine* is to prevent the proponent of potentially prejudicial matter from displaying it to the jury in any manner until the trial court has ruled upon its admissibility in the context of the trial itself." *Id*. (quoting *Colon*, 198 A.3d at 1255). "[A]n *in limine* ruling is not final, and a trial justice is vested with broad discretion to reconsider the ruling as the trial unfolds." *Id*. (brackets omitted) (quoting *Colon*, 198 A.3d at 1255).

Rule 609 of the Rhode Island Rules of Evidence articulates the admissibility of a witness's criminal convictions into evidence for credibility impeachment purposes. The purpose of permitting evidence of a witness's prior conviction under Rule 609 is to allow the jury "to consider whether or not a person who has previously broken the law may have such disrespect for the law as to render him or her unwilling to abide by the oath requiring truthfulness while testifying." *Gongoleski*, 14 A.3d at 223 (quoting *Remy*, 910 A.2d at 798). Rule 609(a) states that:

> "For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record. 'Convicted of a crime' includes (1) pleas of guilty, (2) pleas of nolo contendere followed by a sentence (i.e. fine or imprisonment), whether or not suspended and (3) adjudications of guilt."

However, as mentioned *supra*, "the trial justice is vested with a considerable degree of discretion in deciding whether or not to admit evidence of prior convictions to impeach a witness." *Gongoleski*, 14 A.3d at 222 (brackets omitted) (quoting *Remy*, 910 A.2d at 796). Moreover, "this Court may uphold the trial justice even if this Court would have decided the matter differently had it been in the trial justice's position." *State v. McRae*, 31 A.3d 785, 792 (R.I. 2011). Evidence of a criminal conviction is not admissible under this rule "if the court determines that its prejudicial effect substantially outweighs the probative value of the conviction." R.I. R. Evid. 609(b).

In light of the broad discretion to which we accord a trial justice's decision to exclude evidence under Rule 609, we cannot say that the trial justice abused her discretion in excluding

evidence of Cacciato's prior convictions in this case. The defendant relies primarily on the inconsistencies between the testimonies of Vanmoerkerque and Cacciato to argue that the evidence of Cacciato's prior convictions was crucial for the jury to evaluate her credibility. While Cacciato's credibility was certainly at issue in this case, that alone does not render the trial justice's decision to exclude the prior convictions an abuse of discretion.

With respect to Cacciato's conviction for resisting arrest, we are satisfied that the trial justice conducted the appropriate balancing test and we perceive no basis for holding that she abused her discretion. As set out *supra*, the rationale behind admitting evidence of a prior conviction under Rule 609 is to allow a jury to consider whether a witness who has violated the law is also likely to disrespect the oath to testify truthfully. *Gongoleski*, 14 A.3d at 223. The trial justice found that evidence of the resisting arrest conviction would constitute "pile-on" evidence. Clearly, it pales in comparison to the copious evidence of Cacciato's illicit use and distribution of crack cocaine, to which both she and Vanmoerkerque testified. The trial justice, therefore, did not abuse her ample discretion by excluding this conviction.

The same reasoning that the trial justice articulated regarding Cacciato's conviction for resisting arrest applies equally to Cacciato's conviction for domestic disorderly conduct. Further, the mere fact that the trial justice classified this conviction as a "petty misdemeanor" does not lead to the conclusion that she ruled that a carve-out exists for that class of offenders. Even if the trial justice did intend to exclude this conviction based solely on her classifying it as a "petty" misdemeanor, "[i]t is well settled * * * that this Court may uphold a trial justice's decision 'even though the specific grounds relied upon by the justice were erroneous.'" *State v. Vocatura*, 922 A.2d 110, 116 (R.I. 2007) (emphasis omitted) (quoting *State v. Froais*, 653 A.2d 735, 738 (R.I. 1995)) (upholding a trial justice's decision to preclude a certain witness from testifying on

additional grounds than that relied upon by the trial justice); *see Progressive Northern Insurance Company v. Lyden*, 986 A.2d 231, 233 (R.I. 2010) (recognizing that "this Court is 'free to affirm on grounds other than those relied on by the trial justice'" (quoting *Shepard v. Harleysville Worcester Insurance Co.*, 944 A.2d 167, 170 (R.I. 2008))). Therefore, we hold that, for the same reasons that we articulated as to the conviction for resisting arrest, the trial justice did not abuse her discretion in excluding evidence of Cacciato's prior conviction for domestic disorderly conduct.

**B**

**Admissibility of Photographs and Testimonial
Evidence from January 8, 2016**

On appeal, Lamontagne argues that the trial justice abused her discretion in excluding the January 8, 2016 photographs of bruises on his torso and supporting testimony from the investigator, Beltran. He contends that the evidence was not unfairly prejudicial under Rule 403 because the evidence at trial indicated that defendant was injured on the date of the incident, the jury was instructed on self-defense, and the evidence was relevant under Rule 401. The defendant also argues that the question of whether there was sufficient evidence presented at trial to connect the injuries depicted in the photographs to the events that occurred on December 27, 2015, goes to the weight of the evidence and not its admissibility.

Evidence must, at the very least, be relevant in order to be admissible. R.I. R. Evid. 402. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." R.I. R. Evid. 401. However, the trial justice may exclude relevant evidence "if its probative value is substantially outweighed by" *inter alia* "the danger of unfair prejudice, confusion of the issues, or misleading the jury * * *." R.I. R. Evid. 403.

Based on our review of the record, we are convinced that the photographs and supporting testimony—without further evidence connecting the injuries depicted in the photographs to the altercation with Cacciato that occurred nearly two weeks earlier—were inadmissible. The only two pieces of evidence presented at trial that may have allowed the jury to connect the two events were ill suited to provide a sufficient nexus: (1) defendant's hospital record from the night of the incident, and (2) defendant's statement to the police that he hit Cacciato "because she was trying to get at [him]." While the hospital records show that he did have some injuries, there is no indication that, on December 27, 2015, Lamontagne had pain or injury in the areas of his torso that appeared bruised in the photographs that were taken nearly two weeks later. Further, as the trial justice pointed out, there was no evidence presented demonstrating that Cacciato actually struck Lamontagne.

Therefore, we are of the opinion that the trial justice did not abuse her discretion in excluding the photographs of Lamontagne taken by Beltran on January 8, 2016, and Beltran's supporting testimony.

**IV**

**Conclusion**

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record may be returned to that tribunal.

**Justice Goldberg, concurring.** I wholeheartedly join the majority opinion. I write separately in order to echo the sentiments of our esteemed predecessors and to reiterate my deep and everlasting commitment to the principle that a criminal trial is a search for the truth. *See, e.g.*, *State v. Bozzo*, 223 A.3d 755, 761 (R.I. 2020); *State v. Pacheco*, 161 A.3d 1166, 1177 (R.I. 2017);

- 13 -

*State v. Peoples*, 996 A.2d 660, 665 (R.I. 2010); *State v. Clark*, 974 A.2d 558, 579 (R.I. 2009); *State v. Oster*, 922 A.2d 151, 163 (R.I. 2007); *State v. Kholi*, 672 A.2d 429, 437 (R.I. 1996); *State v. Mattatall*, 603 A.2d 1098, 1115 (R.I. 1992); *State v. Powers*, 526 A.2d 489, 494 (R.I. 1987); *State v. Diaz*, 456 A.2d 256, 258 (R.I. 1983); *State v. Palmigiano*, 112 R.I. 348, 361, 309 A.2d 855, 863 (1973); *State v. Lerner*, 112 R.I. 62, 84, 308 A.2d 324, 339 (1973).

In light of these sterling pronouncements, one need not look to a dictionary for a definition of a "criminal trial." A criminal trial has never been viewed as armed conflict in which the parties may resort to the use of weapons to attack the character of a witness, even one who testifies for the state, sometimes at great personal risk. A criminal trial is not war.

Article VI of the Rhode Island Rules of Evidence, entitled "Witnesses[,]" consistently affirms the principle that a witness may only be impeached by evidence that relates to credibility. *See* R.I. R. Evid. 607 (entitled "Who may impeach[,]" Rule 607 provides that the party calling the witness may not impeach by evidence of bad character "unless, in the view of the trial justice, the interests of justice so require"); R.I. R. Evid. 608 (entitled "Evidence of character and conduct of witness[,]" Rule 608 provides that evidence of the character and conduct of the witness is strictly limited to that of truthfulness or untruthfulness and may not be rebutted by extrinsic evidence).

Rule 609, entitled "Impeachment by evidence of conviction of crime[,]" is the embodiment of the tenet that evidence must serve the truth-searching purpose of a trial. Simply put, not all criminal convictions are admissible. Indeed, if the conviction is for a misdemeanor that does not involve dishonesty or a false statement (the most reliable barometer for gauging credibility), there must first be an offer of proof by the proponent and an opportunity by the opposing party to contest its use. The admissibility of the misdemeanor conviction is committed to the sound discretion of a trial justice, who is thoroughly versed in the ways of a criminal trial. Evidence of a witness's

conviction carries so much potential for unfair prejudice that trial justices must give an unequivocal cautionary instruction to the jury to temper the potential for explosive prejudice immediately after it is introduced, and again in the final instructions that the evidence may be considered solely for purposes of evaluating the witness's credibility and for no other purpose.

The offense of disorderly conduct, as set forth in G.L. 1956 § 11-45-1, is classified as a petty misdemeanor. It does not rise to the level of a misdemeanor crime. Because this petty misdemeanor offense has no relevance to truth or veracity whatsoever, its availability for impeachment under Rule 609 is strictly cabined. Its admissibility is committed to the sound discretion of the trial justice, to whom we accord extreme deference. "Upholding a trial court's discretionary ruling does not imply that the appellate court necessarily would have ruled in the same manner as the original determination." *State v. Werner*, 831 A.2d 183, 204 (R.I. 2003). This is so because it is the trial justice's reasoning that we evaluate. *Id*. at 204-05.

Finally, disorderly conduct has had its own checkered past in our constitutional jurisprudence because it was employed to prevent or punish the exercise of free speech or resulted in punishment for otherwise lawful conduct. *Cf. State v. Tavarozzi*, 446 A.2d 1048, 1052, 1053 (R.I. 1982) (loud and vulgar speech is not disorderly conduct). Thus, its potential for impeachment may be of little utility as was astutely recognized by the trial justice.


**Justice Robinson, dissenting in part.** I respectfully dissent. I do not lightly part company with my colleagues, but I have no choice but to do so in this instance because I am unequivocally convinced that reversible error occurred when the trial justice precluded the jury from learning that the complaining witness had been convicted of two particular criminal offenses.

As the majority recognizes with laudable candor, the fact that "Cheryl Cacciato was the only percipient witness to the alleged assault and robbery," means that "her credibility was critical to the prosecution." The reason for allowing evidence of a witness's prior conviction pursuant to Rule 609 of the Rhode Island Rules of Evidence is to provide the finders of fact with a basis for assessing the witness's credibility. *See State v. Whitfield*, 93 A.3d 1011, 1017 (R.I. 2014). Thus, admitting Ms. Cacciato's two prior convictions would have clearly furthered the purpose of Rule 609 and, accordingly, I firmly believe that said convictions should have been admitted, there being no indication of undue prejudice to the prosecution. *See State v. McWilliams*, 47 A.3d 251, 264 (R.I. 2012) ("Because defendant and the victim were the only percipient witnesses to the crime, credibility was a key factor in the jury's analysis as it struggled to determine precisely what occurred * * *."); *see also State v. Mercurio*, 89 A.3d 813, 819 (R.I. 2014) (upholding the admission of the witness's prior convictions because the case "largely hinged on a credibility determination, making the ability to impeach a witness's credibility of even greater importance"). Further, we have stated that "[a] jury has the *right* to weigh whether one who repeatedly refuses to comply with society's rules is more likely to ignore the oath requiring veracity on the witness stand than a law abiding citizen." *McWilliams*, 47 A.3d at 262 (emphasis added) (internal quotation marks omitted); *see State v. Remy*, 910 A.2d 793, 798 (R.I. 2006) (emphasizing that the rationale behind Rule 609 "is that the jury should be able to consider whether or not a person who has previously broken the law may have such disrespect for the law as to render him or her unwilling to abide by the oath requiring truthfulness while testifying").

The trial justice ruled that the jury had heard sufficient evidence of Ms. Cacciato's illegal activities for it to be able to take into account her disrespect for the law when evaluating her credibility. On that basis, she concluded that admitting Ms. Cacciato's resisting arrest conviction

- 16 -

would be "unduly confusing and prejudicial." I simply do not understand how the plain blunt fact that Ms. Cacciato, the complaining witness, had been previously convicted of two crimes would somehow be confusing for the jury, much less unduly confusing, even given the fact that there was also other evidence demonstrative of her illegal, drug-related activities.

With respect to the trial justice's conclusion that the resisting arrest conviction would be unduly prejudicial, while Rule 609(b) does provide for the exclusion of evidence of a past conviction where "its prejudicial effect substantially outweighs the probative value of the conviction," such prejudice must consist of much more than the simple fact that the evidence is disadvantageous to one party. This Court has repeatedly stated that a trial justice should not exclude evidence under Rule 403[1] unless it is both "marginally relevant and *enormously* prejudicial * * *." *State v. Patel*, 949 A.2d 401, 412-13 (R.I. 2008) (emphasis added); *see also Ribeiro v. Rhode Island Eye Institute*, 138 A.3d 761, 772 (R.I. 2016); *State v. Rodriguez*, 996 A.2d 145, 152 (R.I. 2010); *Wells v. Uvex Winter Optical, Inc.*, 635 A.2d 1188, 1193 (R.I. 1994). The ultimate basis for my thinking with respect to Rule 403 in general and in the specific context of the instant case is Justice Florence Murray's seminal opinion for a unanimous Court in *Wells*. *Wells*, 635 A.2d at 1188. I am especially guided by the following sagacious language from that opinion:

> "Generally all relevant evidence is admissible. Although the trial justice may have discretion pursuant to Rule 403 to exclude evidence whose prejudicial effect outweighs its relevance, such discretion must be exercised sparingly. *The determination of the value of evidence should normally be placed in the control of the*

---

[1]     Rule 403 of the Rhode Island Rules of Evidence provides:

> "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

*party who offers it.* Unless evidence is of limited or marginal relevance and enormously prejudicial, the trial justice should not act to exclude it." *Id.* at 1193 (emphasis added).

As Rule 403 and Rule 609(b) contain almost identical standards for excluding evidence for undue prejudice, in my view, the same principle should apply to a trial justice's decision to exclude evidence of a prior conviction under Rule 609.[2]

Admittedly, Ms. Cacciato's illegal drug activity is indicative of her disrespect for the law. Nonetheless, the fact that she had previously been convicted and sentenced for two other crimes within three years prior to the incident at issue could certainly cause a reasonable juror to further question her credibility. Evidence of a conviction is of a different type and quality from evidence of a witness having engaged in the regrettable but all-too-common involvement with illegal drugs. A conviction reflects the fact that the person has encountered the judicial system and that that system has solemnly evaluated the charges and determined that the person is guilty of a criminal offense.

Additionally, I am unable to agree with the trial justice's characterization of Ms. Cacciato's prior conviction as "pile-on" evidence, especially in light of this Court's history of liberally permitting prior convictions to be used for impeachment purposes. We have previously upheld the admission of far more than two of a witness's prior convictions. *See Whitfield*, 93 A.3d at 1017-18 (upholding the admission of fourteen of the defendant's prior convictions); *State v. McRae*, 31 A.3d 785, 791-93 (R.I. 2011) (upholding the admission of seven of the defendant's

---

[2] Although *Wells v. Uvex Winter Optical, Inc.*, 635 A.2d 1188, 1189 (R.I. 1994), dealt with civil litigation, the case has been frequently cited in criminal cases decided by this Court. *See, e.g.*, *State v. Moreno*, 996 A.2d 673, 683 (R.I. 2010); *State v. Rodriguez*, 996 A.2d 145, 152 (R.I. 2010); *State v. Pitts*, 990 A.2d 185, 190 (R.I. 2010); *State v. Patel*, 949 A.2d 401, 412 (R.I. 2008); *State v. Graham*, 941 A.2d 848, 862 (R.I. 2008).

prior convictions); *State v. Tetreault*, 31 A.3d 777, 783-84 (R.I. 2011) (upholding the admission of eleven of the defendant's prior convictions).

Importantly, each of those cases involved the admission of the defendant's prior convictions, as opposed to those of a complaining witness such as Ms. Cacciato. This distinction is crucial because, in a criminal trial, it is the defendant's liberty interest that is at stake; and the defendant therefore has an especially great interest in challenging those who testify against him or her. Accordingly, a criminal defendant is entitled to paint an adverse witness (and perhaps especially his or her accuser) in tones as dark as the law will permit. *See State v. Covington*, 69 A.3d 855, 865 (R.I. 2013) ("It is well settled that [d]ue process requires that every defendant have a full opportunity to establish the best and fullest defense available to him.") (internal quotation marks omitted). A criminal trial is radically different from a mild-mannered exposition of competing views as might occur in a college debate or in a graduate school seminar.[3] With the exception of unfair surprise at trial or personal attacks on the prosecutor, I struggle to comprehend how the state could be prejudiced by the admission of two prior convictions of the complaining witness in such a way that such prejudice substantially outweighs the convictions' probative value. After all, the prosecution's ultimate goal must be "that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935), *overruled on other grounds by Stirone v. United States*, 361 U.S. 212 (1960).

I am fully aware of the broad discretionary powers that are accorded to a trial justice with respect to evidentiary issues. But finding an abuse of that discretion is certainly not unprecedented.

---

[3]      It should go without saying that a criminal trial is a high-stakes form of litigation, the latter word being derived from the Latin word that has been defined as meaning "contention, strife, quarrel." *Cassell's New Compact Latin-English English-Latin Dictionary* 133 (1963). As such, the parties to such a proceeding should be presumptively entitled to use all of the "weapons" that our rules make available. Too much is at stake for it to be otherwise.

*See, e.g.*, *Mercurio*, 89 A.3d at 822; *Morabit v. Hoag*, 80 A.3d 1, 14 (R.I. 2013); *State v. Gaspar*, 982 A.2d 140, 149 (R.I. 2009). Even taking into account the deference that we accord to evidentiary rulings, it is my view that the record reveals no adequate basis for the trial justice to have excluded the two convictions at issue, and the trial justice did not provide an adequate explanation of her reason to do so. *See Boscia v. Sharples*, 860 A.2d 674, 677 (R.I. 2004) (holding that the trial justice erred because she "offered no reason why she found the photographs 'unduly prejudicial' or, in fact, how they would prejudice defendants' case"). In my opinion, the exclusion of those two convictions deprived defendant of a fair trial and, thus, constituted reversible error.[4]

I conclude by reiterating my sincere respect for the majority's well-articulated reasoning that leads it to conclude that there was no abuse of discretion or reversible error; but, in the end, that reasoning fails to persuade me. I must frankly state that I do not believe that the defendant received a fair trial. Rule 609 exists for a purpose: under most circumstances, it permits a witness's conviction for past wrongdoing to be disclosed to the jury, whose solemn duty it is to assess the credibility (*vel non*) of that witness. Rule 609 is a potent weapon, and yet this defendant was not allowed to use that weapon. Accordingly, I respectfully dissent.

---

[4] Although I agree with the majority's holding with respect to the exclusion of the photographs depicting injuries that defendant allegedly suffered on the date of the incident, this does not alter my opinion that the exclusion of Ms. Cacciato's two prior convictions resulted in reversible error.

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Joseph Lamontagne. |
| **Case Number** | No. 2018-241-C.A. (P1/16-941A) |
| **Date Opinion Filed** | June 30, 2020 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Netti C. Vogel |
| **Attorney(s) on Appeal** | For State:<br><br>Mariana E. Ormonde<br>Department of Attorney General<br><br>For Defendant:<br><br>Camille A. McKenna<br>Office of the Public Defender |